IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**KEITH FRANCIS,**

    **Plaintiff,**

v.                                                        Case No.: 3:13-cv-27294

**UNITED STATES OF AMERICA,**

    **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

On October 30, 2013, Plaintiff Keith Francis ("Francis"), filed a *pro se* complaint under the Federal Torts Claim Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671-2680, alleging medical negligence on the part of the VA Medical Center in Huntington, West Virginia. (ECF No. 2). Currently pending before the Court is Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim. (ECF No. 11). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and is referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

The undersigned has reviewed the materials supplied by the parties and finds the issues to be clear. Accordingly, oral argument is not necessary for disposition of the motion. For the reasons set forth herein, the undersigned recommends that Plaintiff's complaint be **DISMISSED**, with prejudice, for lack of subject matter jurisdiction.

1

## I. Relevant Facts and Procedural History

On May 21, 2006, Francis was referred to the VA Medical Center ("VAMC") in Huntington after fracturing his left humerus on a camping trip. (ECF No. 9 at 10).[1] He was diagnosed with a possible proximal avulsion near the glenoid. Because the orthopedic surgeon at the VAMC was not a specialist in treating that condition, Francis was referred to Dr. Luis Bolano, a local orthopedic surgeon. (*Id.*). On August 22, 2006, Dr. Bolano performed surgery on Francis's left shoulder, during which a prosthesis was implanted. Post-operatively, Francis experienced severe, unrelenting pain from the left elbow to the left shoulder that became chronic over the ensuing years. (ECF No. 9-1 at 19).

On December 29, 2010, Francis filed a United States Department of Veterans Affairs ("VA") Form 21-4138 seeking compensation for his left arm and shoulder disability under 38 U.S.C. § 1151. (ECF No. 9 at 17, 19). Section 1151, in relevant part, awards compensation to veterans with a disability that "was caused by hospital care, medical or surgical treatment, or examination furnished the veteran" by either a VA employee or in a VA facility, when the "proximate cause of the disability or death was (A) carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of the [VA] in furnishing the hospital care, medical or surgical

---

[1] Plaintiff supplied a generous amount of factual information in support of his complaint. Defendant does not contest the authenticity or relevance of the materials submitted; therefore, the undersigned has relied upon this information in preparing the findings and recommendations. (ECF Nos. 9, 9-1, 9-2, 9-3). *See Herrera v. Ilhan,* Case No. PWG-12-3253, 2013 WL 3177884, *2 (D.Md. June 21, 2013) (The court may consider documents outside of the pleadings when considering a motion to dismiss if the documents are integral to the complaint and their authenticity is not disputed); *Williams v. United States,* 50 F.3d 299, 304 (4th Cir.1995) (In resolving a motion to dismiss for lack of subject matter jurisdiction, the court may consider materials outside of the complaint without converting the motion into one for summary judgment.); *Thigpen v. United States,* 800 F.2d 393, 396 (4th Cir. 1986), *overruled on other grounds, Sheridan v. United States,* 487 U.S. 392 (1988) (A court may resolve factual questions to determine whether it has subject matter jurisdiction.).

treatment, or examination; or (B) an event not reasonably foreseeable." 38 U.S.C. § 1151(a). Thus, as part of this process, Francis was required to claim and demonstrate that his disability resulted from hospitalization, surgical or medical treatment. (*Id.* at 21). Francis supplied voluminous documents in support of his request for compensation. Nevertheless, his claim was ultimately denied on the basis that the surgery about which Francis complained was not performed by a VA physician and did not take place at a VAMC. (ECF No. 9 at 19-21).

On April 18, 2011, Francis was evaluated by Dr. Michael Fidler, an orthopedic surgery consultant at the VAMC in Clarksburg, West Virginia. (ECF No. 9-3 at 7-10). Francis's chief complaint at that time was left shoulder pain and immobility. He provided Dr. Fidler with a summary of his prior treatment, indicating that ever since the 2006 surgery, he had experienced pain and problems moving his shoulder. Francis also reported that after the surgery he found a bump on the lateral aspect of the mid-shaft of his humerus. Dr. Fidler ordered x-rays, which revealed "a well cemented humeral prosthesis with an oversized humeral head." (*Id.* at 8). Dr. Fidler advised Francis that his prosthesis was ill-fitting, but Dr. Fidler did not recommend surgical intervention because the prosthesis was "well fixed and extensively cemented." (ECF No. 9-3 at 8; ECF No. 9-1 at 19).

In June 2013, Francis tendered a Standard Form ("SF") 95 to the VA, seeking money damages related to Dr. Bolano's surgery. (ECF No. 9 at 2). In particular, Francis complained that the prosthesis implanted by Dr. Bolano was "too big and subsequently crushed [his] rotator cuff and several nerves." (*Id.*). According to Francis, he was at risk of losing his arm due to the permanent damage caused by the prosthesis.

On October 10, 2013, the VA wrote a letter to Francis denying his claim for damages. (ECF No. 9 at 7-8). The VA explained that there were two reasons for the denial. First, Dr. Bolano was not a government employee. While the FTCA authorizes payment of compensation for injuries resulting from the negligence of government employees acting within the scope of their employment, it does not authorize payments for the acts or omissions of contractors such as Dr. Bolano. Second, Francis had failed to assert the claim within the two-year limitation period allowed by the FTCA. The VA advised Francis that the limitation period was jurisdictional and could not be waived, but notified Francis that he could file suit in federal district court if he was dissatisfied with the VA's denial of his claim. Accordingly, Francis filed the instant civil action.

## II. Motion to Dismiss

On January 21, 2014, the United States filed a motion to dismiss the complaint, asserting two grounds in support of its motion. First, the United States argues that Francis failed to timely present his administrative claim as required by the FTCA. (ECF No. 11 at 1-2). According to the Government, in the SF 95 filed by Francis, he acknowledged that his claim accrued on August 22, 2006, the date on which Dr. Bolano performed the surgery at issue. However, Francis did not present his claim to the VA until June 13, 2013, nearly seven years later. Thus, Francis missed the two-year deadline required by the FTCA. The Government contends that in the absence of a timely-filed administrative claim, this Court lacks subject matter jurisdiction over Francis's complaint.

Second, the United States asserts that the FTCA incorporates the law of the state where the alleged wrongdoing occurred; consequently, Francis is required to follow relevant West Virginia law when asserting his claim, which in this case is the West

Virginia Medical Professional Liability Act, W.V. Code § 55-7B-1 *et seq.,* ("MPLA"). (ECF No. 11 at 2-3). Under the MPLA, Francis was required to serve the VA with a notice of claim and screening certificate of merit before filing a lawsuit. Francis failed to take these preliminary steps; therefore, his complaint should be dismissed.

In his response, Francis does not directly counter the arguments raised by the United States. (ECF No. 16). Instead, Francis states that he hired an attorney in 2011 to assist him with a claim against the VA, which was denied and is on appeal.[2] (*Id.* at 2). He also provides additional detail regarding the difficulties he has experienced with his arm and shoulder since the surgery by Dr. Bolano.

### III. Discussion

The United States moves for dismissal of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). A motion under Rule 12(b)(1) challenges the court's subject matter jurisdiction over the dispute, *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982), while a motion under Rule 12(b)(6) tests the sufficiency of the complaint to state a claim. *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (to survive a 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face").

A Rule 12(b)(1) motion can be presented in two ways. First, the movant may claim that the jurisdictional allegations of the complaint are not true. *Adams,* 697 F.2d at 1219. In that case, the court "is to regard the pleadings as mere evidence on the issue, and may consider evidence outside of the pleadings without converting the proceeding to one for summary judgment. *Richmond, Fredericksburg & Potomac R. Co. v. United*

---

[2] It appears from some of the documents supplied by Frances, and from the reply memorandum filed by the United States, the claim asserted by Francis's attorney in 2011 was a continuation of Francis's request for benefits under 38 U.S.C. § 1151, and was not for damages under the FTCA. (ECF No. 9-3 at 22, 34-41; ECF No. 17).

*States,* 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams,* 697 F.2d at 1219). Second, the movant may contend that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams,* 697 F.2d at 1219. When presented with this contention, the court assumes that the allegations in the complaint are true and affords plaintiff the same procedural protection he would receive under Rule 12(b)(6). *Id.* The burden of proving that the court has subject matter jurisdiction rests with the plaintiff as he is the party asserting it. *Johnson v. North Carolina,* 905 F.Supp.2d 712, 719 (W.D.N.C. 2012). However, the court should grant dismissal "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

Rule 12(b)(6) permits the district court to dismiss a complaint that fails to state a claim upon which relief may be granted. A complaint fails to state a compensable claim when, viewing the well-pleaded factual allegations as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp,* 550 U.S. at 570; *See also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679. Courts are required to liberally construe *pro se* complaints, such as the one filed in this action. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to

6

support a valid legal cause of action. *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir. 2003). The court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985). A Rule 12(b)(6) motion should be granted only "'where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.'" *Hartmann v. Calif. Dept. of Corr. & Rehab.,* 707 F.3d 1114, 1122 (9th Cir.2013) (citing *Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1102 (9th Cir.2008)).

### A.    *Subject Matter Jurisdiction*

As the Government points out, the FTCA is the exclusive remedy for common law negligence claims arising from the acts or omissions of federal employees acting within the scope of their employment. The FTCA provides, *inter alia*, that a tort claim is "forever barred unless it is presented in writing to the appropriate federal agency within two years after such claim accrues...." 28 U.S.C. § 2401(b). "For the purposes of section 2401(b), a cause of action accrues when the plaintiff knows, or in the exercise of due diligence, should have known, first, of the existence of the injury, and second, of the cause thereof." *Muth v. United States,* 1 F.3d. 246, 249 (4th Cir. 1993) (citations omitted). To present a claim under the FTCA, the complaining party must supply the appropriate federal agency with an executed SF 95 or "other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death." 28 C.F.R. § 14.2(a). The submission of a timely administrative claim is a jurisdictional prerequisite to filing a civil action under

the FTCA. *Henderson v. United States,* 785 F.2d 121, 123 (4th Cir. 1986). Because the FTCA is a waiver of sovereign immunity, the notice requirement is strictly construed and cannot be waived. (*Id.* at 123-24).

The record in this case demonstrates that Francis underwent surgical repair of his left shoulder in August 2006. From the time of the surgery, Francis experienced extreme pain and immobility in his shoulder and arm, which did not improve over time or with physical therapy. (ECF No. 9-1 at 19). In fact, Francis was unable to complete his post-operative physical therapy due to the amount of pain he experienced, which prompted the therapist to send him back to Dr. Bolano for reevaluation. (ECF No. 16 at 1). Francis also felt a lump in his arm that was not present prior to the surgery, which he ultimately learned was pooling of the cement used to secure his shoulder prosthesis. (*Id.*) In April 2011, Francis reported to Dr. Fidler that he had pain "right from the beginning," and by March 2011, Francis was wearing a sling to support his left arm and shoulder. (ECF No. 9-3 at 9). In August 2012, Francis told another medical examiner that ever since the surgery in 2006, he had experienced paresthesias in his left arm that had grown progressively worse with time. (*Id.* at 19). These notations certainly suggest that, from the outset, Francis suspected the problems with his left arm and shoulder were related to his 2006 surgery. A medical negligence claim under the FTCA accrues "even if the claimant does not know the precise medical reason for the injury, provided that he knows or should know that some aspect of the medical treatment caused the injury." *Hahn v. United States,* 313 Fed. Appx. 582, 585 (4th Cir. 2008). Accordingly, the Government's position that Francis knew or should have known of his claim as early as 2006 is not unreasonable.

On the other hand, the record also indicates that Dr. Bolano reassured Francis that the surgery went as expected, which arguably misled him into believing that the results were standard and customary. (ECF No. 9-1 at 19). Nonetheless, even giving Francis every benefit of the doubt, he certainly knew or should have known of the alleged malpractice and the resulting injuries to his arm and shoulder no later than April 18, 2011 when Dr. Fidler told him that the prosthesis was too large and could not be removed due to extensive cementing. (ECF No. 9-3 at 9-10). Indeed, it is likely that Francis appreciated the iatrogenic component of his disability even earlier than April 2011, given that he had already filed a claim with the VA seeking benefits for injuries caused by the 2006 surgery. Moreover, he hired an attorney shortly after his visit with Dr. Fidler to assist him in the pursuit of these benefits. (ECF No. 16 at 2; ECF No. 9-3 at 38). On October 30, 2012, the VA notified Francis that his claim for benefits under 38 USC § 1151 was denied, notwithstanding evidence of problems related to his left shoulder surgery, because the procedure was not performed at a VA facility or by a VA physician. (ECF No. 9 at 19-21). Unfortunately, none of these events prompted Francis to initiate a negligence action by filing a SF 95, or similar notice of tort claim, "accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death" until June 13, 2013, two and a half years after Francis filed his § 1151 claim and more than two years after his visit with Dr. Fidler.[3]

---

[3] Francis does not contend that the filing of his request for § 1151 benefits constituted notification to the VA of his tort claim, nor does he state that he provided a request for a sum certain in damages prior to June 13, 2013. Generally, the procedure for requesting benefits under § 1151 runs on a separate track from the pursuit of a FTCA claim. *See Manfield v. Peake,* 525 F.3d 1312, 1317-18 (Fed Cir. 2008); *Jones v. United States,* Case 07-743-MPT, 2008 WL 4952592, *3 (D.Del. Nov. 20, 2008) (citing *Slater v. United States,* 175 Fed.Appx. 300, 306 (11th Cir. 2006)). However, a veteran has the option of seeking compensation for treatment-related injuries using either one or both of these remedies. *Manfield,* 525 F.3d at 1317.

Consequently, Francis had, at the very latest, until April 2013 to file a SF 95 or other notice of his tort claim with a demand for a sum certain in damages. He failed to supply these materials to the VA until June 13, 2013. For that reason, the undersigned **FINDS** that Francis's FTCA claim is barred under 28 U.S.C. § 2401(b), thus depriving this Court of subject matter jurisdiction.[4]

### B. *West Virginia Medical Professional Liability Act*

The United States also argues that Francis's complaint must be dismissed for his failure to comply with the MPLA. The elements of a negligence claim under the FTCA are determined by state law, and whether a claim can be maintained depends "upon whether a private individual under like circumstances would be liable under state law." *United States v. Muniz,* 374 U.S. 150, 153, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963); *Unus v. Kane,* 565 F.3d 103, 117 (4th Cir. 2009) ("The FTCA does not itself provide for a substantive cause of action. Rather, in assessing FTCA claims, we apply the substantive law of the state where the alleged tort took place...."). In West Virginia, claims of medical malpractice are governed by the MPLA.

The MPLA provides that at least thirty days prior to filing a medical negligence action, the claimant must serve upon each health care provider to be joined in the case, a notice of claim and screening certificate of merit meeting the following requirements:

> The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health

---

[4] Francis provides no explanation for his delay in submitting an SF 95, nor does he claim that equitable tolling should apply. When considering the importance of limitations periods, "equitable tolling is appropriate only 'where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action.' Indeed, the doctrine of equitable tolling is based on the view that a defendant should not be encouraged to engage in 'misconduct that prevents the plaintiff from filing his or her claim on time.'" *Kokotis v. U.S. Postal Service,* 223 F.3d 275, 280-81 (4th Cir. 2000) (quoting *English v. Pabst Brewing Co.,* 828 F.2d 1047, 1049 (4th Cir. 1987)). Here, there is no evidence upon which one can infer that the VA took steps to deceive or mislead Francis in an effort to prevent his filing of a FTCA claim. Therefore, no basis exists for the application of equitable tolling.

10

> care providers and health care facilities to whom notices of claim are being sent ... The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted.

W.V.Code § 55-7B-6(b). If the claimant believes "that no screening certificate of merit is necessary because the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care," the claimant need only serve the health care provider with a notice of claim and a statement "specifically setting forth the basis of the alleged liability of the health care provider." W.V.Code § 55-7B-6(c). Compliance with these provisions is "substantive" and "mandatory;" therefore, failure to adhere to the statutory requirements provides grounds for a dismissal of the complaint, without prejudice. *Stanley v. United States,* 321 F.Supp.2d 805, 807 (N.D.W.Va. 2004).

Francis does not contest the Government's assertion that no notice of claim, screening certificate of merit, or statement pursuant to W.V.Code § 55-7B-6(c) was provided to the VA prior to institution of this civil action. Consequently, the undersigned **FINDS** that Francis has failed to comply with the mandatory provisions of the MPLA and his complaint should be dismissed.

### IV.   Proposal and Recommendations

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the United States District Judge accept and adopt the findings herein and **RECOMMENDS** that the United States' Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim, (ECF No. 11), be **GRANTED**; that

Plaintiff's complaint be **DISMISSED**; and this action be removed from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Plaintiff, Defendants, counsel of record, and any unrepresented party.

**FILED:** February 26, 2014

Cheryl A. Eifert
United States Magistrate Judge